UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

HARU HOLDING CORP.,

                    Plaintiff,

                                          13 Civ. 7705 (RWS)

        - against -

                                               OPINION

HARU HANA SUSHI, INC.,

                    Defendant.
----------------------------------------X


A P P E A R A N C E S:


        ATTORNEYS FOR PLAINTIFF

        BEHAR & ASSOCIATES
        94 Second Street
        Mineola, NY 11501
        By: Brad M. Behar, Esq.

        MAVEN INTELLECTUAL PROPERTY
        333 S.E. 2nd Avenue, Suite 200
        Miami, FL 33131
        By: Janet C. Moreira, Esq.


        ATTORNEYS FOR DEFENDANT

        LAW OFFICES OF VINCENT S. WONG
        39 East Broadway, Suite 306
        New York, NY 10002
        By: Eugene Kroner, Esq.

**Sweet, D.J.**

Plaintiff Haru Holding Corp. ("Plaintiff") has moved for an order holding Defendant Haru Hana Sushi, Inc. in contempt for failure to comply with the Court's January 9, 2014 Consent Judgment ("Consent Judgment") and to compel Defendant to comply with the Consent Judgment. Based on the conclusions set forth below, the motion is granted.

## I.  Prior Proceedings

On October 30, 2013, Plaintiff filed its complaint alleging trademark claims and injury to business reputation by Defendant's use of the "Haru" name, alleging Defendant infringed on its marks and business reputation in operation of the similarly named Haru Hana Sushi, Inc. restaurant located at 35 Main Street in Irvington, New York. The parties reached agreement and filed a Consent Judgment pursuant to Federal Rule of Civil Procedure 58, approved by this Court on January 9, 2014.

The Consent Judgment acknowledged Plaintiff's exclusive right of use of the "Haru" trademark, Defendant's unauthorized use of the same, and entered judgment in favor of Plaintiff and

2

against Defendant. Consent Judgment at 1-3. It enjoined
Defendant from identifying as, using, advertising, promoting,
selling goods or services connected with, or using domain names
with or confusingly similar to the word "Haru," "Haru Hana
Sushi, Inc.," and other iterations thereof. Id. at ¶ 8. The
Consent Judgment permitted Defendant to continue using then-
existing advertising and promotional materials (including menus,
flyers, and business cards) up to and including May 26, 2014,
but requiring the destruction (and certification of destruction)
of these materials by no later than May 31, 2014. Id. at ¶ 9.
Defendant agreed to transfer ownership of affiliated domain
names to Plaintiff. Id. at ¶ 10.

Plaintiff filed the instant motion on December 23, 2015,
alleging Defendant continued to use the Haru trademarks in
violation of the Consent Judgment. Oral argument was held and
the motion deemed fully submitted on January 14, 2016.

## II.  Relevant Facts

Specifically, Plaintiff alleges the following breaches of
the Consent Judgment: (i) Defendant's continued use of marketing
materials that display the Haru name; (ii) Defendant's continued
identification as "Haru Hana" by telephone; (iii) Defendant's

continued use of the corporate name "Haru Hana Sushi, Inc."; and
(iv) third-party directory listings, including Fouresquare.com,
Yelp.com, Netwaiter.com, Tripadvisor.com, and Facebook.com.
Pl.'s Mem. of Law in Supp. Mot. Civ. Contempt at 5-6. ("Pl.'s
Mot."); Moreira Declr. ¶-14.[1]


Defendant has pled compliance with the substantive
provisions of the Consent Judgment. See Def.'s Opp. Plaintiff
did not dispute at oral argument that as of the date of
argument, the "Haru" business materials have been destroyed,
employees have been instructed not to use the "Haru" name, the
websites have been taken down, and that the liquor license in
question has expired. Plaintiff's reply also uses the past tense
to refer to the advertisement and telephone related breaches and
concedes that the third party websites have since been updated
to reflect the Irvington restaurant is no longer identified as
"Haru Hana." Pl.'s Reply at 2 ¶ 4, 5-6. The Court takes judicial
notice, see Federal Rule of Evidence 201, of the public Entity
Information provided by the New York State Department of State,

---

[1] In its Reply, Defendant points to two continuing breaches as of
January 6, 2016: (i) that Haru Hana Sushi, Inc. remains an
active corporation, and (ii) that Defendant has failed to
produce evidence of sale or transfer of ownership of Haru Hana
Sushi, Inc. to Kiku Sushi. Inc. or produce a fully executed
commercial lease for Kiku Sushi. Pl.'s Reply at 2-3, ¶ 6-8. Both
constitute the same breach: continued use of the Haru Hana Sushi
Corporate name in violation of paragraph 8, section (v)(a).

Division of Corporations Corporate and Business Entity Database showing that "Haru Hana Sushi, Inc.," registered to Yun Li for 35 Main Street, Irvington, New York 10533, is an inactive entity as of January 25, 2016.[2]

Plaintiff submitted at oral argument that Defendant's current compliance has been in response to the instant motion, evidencing that Defendant could have timely taken such reasonable steps earlier and as required by the Consent Judgment. The parties thus implicitly agree that Defendant is in current substantive compliance with respect to the breaches pled in Plaintiff's instant motion.

## III. Applicable Standard

"The imposition of a civil contempt order is a severe sanction subject to a higher standard of proof than the preponderance of the evidence standard applicable to ordinary cases." Clarkson v. Goord, No. 91 CIV. 1792, 2014 WL 4290699, at

---

[2] New York State Department of State, Division of Corporations Corporate and Business Entity Database, available at https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORM ATION?p_nameid=3467676&p_corpid=3453293&p_entity_name=haru%20han a&p_name_type=%25&p_search_type=BEGINS&p_srch_results_page=0 (Mar. 4, 2016). The Database is available at http://www.dos.ny.gov/corps/bus_entity_search.html.

*3 (S.D.N.Y. Aug. 29, 2014) (citing King v. Allied Vision Ltd.,
155 F.R.D. 440, 448 (S.D.N.Y. 1994)). Civil contempt must
therefore be shown by clear and convincing evidence. Id.; New
York State Nat'l. Org. For Women v. Terry, 886 F.2d 1339, 1351
(2d Cir.1989). "A court's inherent power to hold a party in
civil contempt should be exercised only when: (1) the order the
party allegedly failed to comply with is clear and unambiguous;
(2) the proof of noncompliance is clear and convincing; and (3)
the party has not diligently attempted in a reasonable manner to
comply." Id.; see also Scottish Air Int'l. v. British Caledonia
Group, PLC, 867 F.Supp. 262, 266-67 (S.D.N.Y. 1994).

Once contemptuous noncompliance of a Court order has been
established, the only acceptable purposes of civil contempt "is
coercive and compensatory rather than punitive." Chere Amie,
Inc. v. Windstar Apparel, Corp., 175 F. Supp. 2d 562, 566
(S.D.N.Y. 2001) (citing Huber v. Marine Midland Bank, 51 F.3d 5,
10 (2d Cir.1995)). Accordingly, the Court has broad discretion
in ordering a remedy to coerce future compliance and "compensate
the injured party for losses resulting from the contemptuous
conduct." Id. (citing A.V. by Versace, Inc. v. Gianni Versace
S.p.A., 87 F. Supp. 2d 281, 289 (S.D.N.Y. 2000); Bear U.S.A.,
Inc. v. Kim, 71 F. Supp. 2d 237, 248-49 (S.D.N.Y. 1999) aff'd,
216 F.3d 1071 (2d Cir. 2000) and aff'd sub nom. Bear U.S.A.,

Inc. v. Bing Chuan Grp. U.S.A., Corp., 216 F.3d 1071 (2d Cir.
2000); Cancer Research Inst., Inc. v. Cancer Research Soc'y,
Inc., 744 F.Supp. 526, 529 (S.D.N.Y. 1990); Perfect Fit Indus.,
Inc. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir. 1982)).


        In imposing a coercive remedy, the Court must
consider:

> (1) the character and magnitude of the harm threatened by
> the continued contumacy; (2) the probable effectiveness of
> any suggested sanction in bringing about compliance; and
> (3) the contemnor's financial resources and the consequent
> seriousness of the burden of the sanction upon him."

Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 110 (2d
Cir. 1987); see also A.V. by Versace, 87 F. Supp. 2d at 296.


## IV. Defendant is in Contempt of the Consent Judgment

        The Consent Judgment is clear and unambiguous as to
Defendant's obligations, and Defendant does not oppose the
motion on the basis that the Consent Judgment is insufficiently
explicit. The relevant portions of paragraph 8 of the Consent
Judgment enjoins Defendant from:

> (iii) identifying, passing off, or creating the false
> association, affiliation or association with HHRC or the
> Haru Trademarks, and if asked, shall expressly deny same;
> (iv) using, advertising, promoting, selling or offering to
> sell . . . in connection with any goods/services, the word
> "HARU," the HARU Trademarks, "HARU HANA SUSHI, INC." "HARU
> HANA," "HARU HANA SUSHI," . . .

(v) using, in whole or in part, the word HARU, any of the HARU Trademarks, "HARU HANA SUSHI, INC.," "HARU HANA," "HARU HANA SUSHI," . . . (a) as a corporate name, trade name, trademark, service mark, collective mark, certification mark, brand name, logo . . . (b) in advertising materials, promotional materials, stationery, packaging, displays, signs of any nature, instructions, labels and other printed materials of any nature whatsoever, (c) in listings of any nature, including, but not limited to, business listings, Internet listings, phone and trade association listings..."

Consent Judgment at ¶ 8. Paragraph 9 further provides:

Notwithstanding the foregoing, up to and including May 26, 2014, Haru Hana Irvington shall be ablet o continue using any currently-existing advertising materials, . . . menus, . . . business cards, and other materials which display, in whole or in part, the word HARU, any of the HARU Trademarks, "Haru Hana Sushi, Inc.," "HARU HANA," "HARU HANA SUSHI" . . . By no later than May 31, 2014, Haru Hana Irvington shall destroy any and all such materials[.]

Id. at ¶ 9.

To support its claims of noncompliance, Plaintiff has submitted the sworn affidavit of private investigator Ralph Bonelli who visited, called, and obtained a menu and business card from the business at 35 Main Street, Irvington, NY 10533, the site of Defendant's (former) sushi business, on November 23, 2015 at approximately 9:30pm. See Bonelli Aff.[3] With respect to the claim that Defendant has continued to utilize marketing materials displaying the Haru name in violation of the Consent Judgment, Bonelli describes seeing a banner identifying "Kiku

---

[3] The date Bonelli alleges he obtained these materials is corroborated by the declaration of Plaintiff's counsel, Janet C. Moreira. Moreira Decl. at ¶ 11-12, Ex. E.

Sushi," but finding take-out menus outside and inside the restaurant bearing the Haru Hana name. Id. at ¶4-5. Bonelli also found business cards next to the register displaying the Haru name. Id. at ¶ 6.

The Bonelli affidavit also supports Plaintiff's claim that Defendant continued to identify as "Haru" by telephone in violation of the Consent Judgment. See id. at ¶ 7. Bonelli reports calling the number on the business card he obtained, observing an employee inside the restaurant answer the phone, being greeted with "Haru Hana" on the phone, and verbally confirming that he had called "Haru." Id. at ¶ 7. Plaintiff submits the declaration of counsel and printouts dated December 11, 2015 to demonstrate the continued existence of Haru Hana Sushi, Inc. as a New York State registered Corporate Entity, and Haru Hana identified businesses on Foursquare.com, Yelp.com, Tripadvisor.com, Netwaiter.com, and Facebook.com. Moreira Decl. at ¶ 13-14, Exs. F-G.

Defendant argues it has complied with the Consent Judgment as follows: that the restaurant in question now operates as Kiku Sushi with new menus; that Defendant does not use, advertise, or promote the "Haru" trademark in connection with the new restaurant; that the Haru materials were destroyed; that

9

employees were instructed to refrain from using the "Haru" name;
that the Haru websites were shut down; and that Defendant
instructed an accountant to dissolve the Haru Hana, Inc.
corporation. Def.'s Opp.[4] at 51; see also Li Aff.. Defendant
alleges that "Haru Hana menus were not given to customers past
the restrictive dates." Def.'s Opp. at 6. However, other than
the assertion that Haru Hana menus were not provided to
customers past the restrictive dates[5] and an affidavit by an
employee that she was instructed to refer to the business as
Kiku Sushi in late 2013 or early 2014, see Chen Aff.,
Defendant's opposition does not allege the specific dates it
entered in to compliance. The affidavit of owner Yun Li
notwithstanding, the nominally pled compliance during the
relevant period between the dates outlined in the Consent
Judgment and the submission of the instant motion is unsupported
by facts.


    Conversely, Plaintiff's evidence of noncompliance is clear
and convincing with respect to the elements of Bonelli's brief.

---

[4] Defendant's Opposition is titled "Plaintiff's Memorandum of Law
in Opposition to Plaintiff's Motion for Civil Contempt."
Citation to "Def.'s Opp." refer to this brief, docket number 14.
[5] Notably, this assertion as pleaded does not necessarily
foreclose the possibility that Kiku Sushi made these materials
were available as Bonelli claims, depending on one's
interpretation of the active or passive nature of the word
"provided."

The terms of the Consent Judgment required Defendant to cease use of the Haru Hana name on printed materials on or before May 27, 2014. Consent Judgment at ¶ 9. The Consent Judgment required that these materials be destroyed on or before May 31, 2014. Id. Plaintiff has submitted sworn affidavits and documentary evidence that these materials were being used at the restaurant more than a year after they should have been destroyed entirely, and that at least one employee identified (and confirmed) the restaurant as "Haru." With no reason to doubt the veracity of Bonelli's sworn testimony, Defendant's breach of paragraph 8, section (v) the Consent Judgment by continued use of the Haru Hana Sushi (Inc.) corporate name, and breach of paragraph 9 by failure to destroy the "Haru" materials, is established by clear and convincing evidence.

With respect to maintenance of the Corporation, Plaintiff has submitted correspondence evidencing that Defendant agreed to pay $50,000 if Haru Hana Sushi, Inc. was not dissolved prior to August 31, 2014. Supp. Moreira Decl. ¶ 3, Ex. A. Likewise, both the Entity Database information submitted by Plaintiff and the current Entity Database information judicially noticed by the Court establish that Defendant maintained Haru Hana Sushi, Inc. well past the dates provided in the Consent Judgment, past the negotiated extended date of August 31, 2014, and past any

11

reasonable period of time. The ongoing active status of Haru
Hana Inc. therefore also establishes continued use of the
corporate name by clear and convincing evidence.

Plaintiff has not sufficiently established breach for
maintenance of the third party listings. The only evidence
Plaintiff provides to show that Defendant had the ability to
manage these listings is the fact that they have since been
changed to reflect that the 35 Main Street location is either
closed (as "Haru Hana") or now operates under the name "Kiku
Sushi." Whether these listings are maintained and updated by
Defendant, the third-party domain owners has not been
established, nor whether the domains were or were not timely
notified of the name change. Thus, even if Defendant had the
responsibility to inform the third-party databases of the name
change, Plaintiff has not sufficiently proven failure to do so
constituting breach of the Consent Judgment.

Defendant points to current compliance to suggest that it
has taken "reasonably diligent steps in abiding by the Court's
Order." See Def.'s Opp. at 7. Plaintiff's evidence of
noncompliance proves otherwise. Regardless of whether Defendant
has complied in the wake of the instant motion, the evidence
showing noncompliance nearly two years after the Consent

12

Judgment was reached demonstrates that the Defendant did not diligently attempt in a reasonable manner to comply.

Non-compliance having been established, Defendant is held in contempt and is ordered to strictly comply with the Consent Judgment going forward with respect to any remaining obligations and to any extent Defendant has not already done so.

## V.   Plaintiff is Entitled to Compensatory Sanctions

Plaintiff requests the following monetary relief: (1) all profits accruing to Defendant through use of the prohibited marks since issuance of the judgment; (2) liquidated damages pursuant to paragraph 11 of the Settlement Agreement in the amount of $50,000 plus pre- and post-judgment interest for each of the material breaches;[6] (3) reasonable attorney's fees and costs associated with bringing this contempt motion and enforcing the terms of the Judgment. Pl.'s Mot. at 9. Defendant

_____

[6] The parties negotiated liquidated damages for breach as follows: "In the event of a Material Breach [use of the Haru trademarks] by Haru Hana Inrvington in addition to all other remedies and relief available to HHC which are expressly reserved, Haru Hana Irvington shall be obligated to pay HHC an amount of Fifty Thousand Dollars ($50,000.00) plus prejudgment and post-judgment interest, for each Material Breach and the same shall be deemed liquidated damages and not a penalty." Moerira Decl. at ¶ 4, Ex. A at ¶ 11.

opposes on the basis of inability to bear such damages, and that further enforcement is both unnecessary and sanctions excessive in light of its current compliance. Def.'s Opp. at 7.

The evidence of Defendant's breach of the Consent Judgment has been established. However, no other quantifiable harm will continue to result given Defendant has since complied with the substantive provisions of the Consent Judgment. Similarly, the probable effectiveness of Plaintiff's suggested sanctions in bringing about compliance is eliminated by Defendant's current compliance. Thus, sanctions serve little remaining coercive function. Finally, Defendant pleads that it would be unable to bear monetary sanctions as Plaintiff has demanded. Def.'s Opp. at 7.

Lack of coercive function notwithstanding, Plaintiff is entitled to compensation for any losses resulting from Defendant's contemptuous breaches. See 25 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action"); see also Chere Amie, 175 F. Supp. 2d at

14

566 ("sanctions should be calculated to coerce . . . and to compensate the injured party for losses.").

However, the flat fee of a liquidated damages provision can be purely punitive in nature where it does not allow Defendants to avoid the fine through future compliance. U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc., No. 02 CIV. 5828 (JFK), 2005 WL 3766976, at *8 (S.D.N.Y. May 3, 2005). Here, where Defendant has taken the necessary steps to cure the breaches identified by Plaintiff, a compensatory sanction can become a punitive one.

Plaintiff concedes that "it is difficult to determine with precision the actual dollar amount that Plaintiff has lost as a result of Defendant's continued use of Plaintiff's federally-and-New York-registered trademarks." Pl.'s Reply at 7. The cases Plaintiff cites supporting an award of profits do not involve additional liquidated damages and thus do not justify provision of profits in this instance. See Aqua Grill v. S.T.F.B. Corp., 1997 WL 563305 (S.D.N.Y. Sept. 4, 1997); Twentieth Century Fox Film Corp. v. 316 W. 49th Street Pub Corp., 1990 WL 165680 (S.D.N.Y. Oct. 23, 1990). The liquidated damages provision in the Settlement Agreement is explicit in that, in order to be construed as lawful, it is not designed as a penalty.

15

As compensation, Plaintiff is granted $50,000 plus pre- and post-judgment interest for the breaches established by the evidence: (1) use of the "HARU" trademark in advertising materials, in violation of paragraph 8, section (v)(b); and (2) continued identification/use of "Haru Hana Sushi" as a corporate name in violation of paragraph 8, section (v)(a) of the Consent Judgment, as evidenced by maintenance of the Haru Hana Sushi, Inc. Corporation, and by identification as "Haru" by telephone. Accordingly, as compensation for Defendant's breaches, Plaintiff is awarded $50,000 total, plus pre- and post-judgment interest.

In addition, Plaintiff is awarded reasonable attorney's fees and costs associated with enforcement of the Consent Judgment. An award of fees is appropriate where "the contemnor had actual notice of the Court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." Chere Amie, Inc., 175 F. Supp. 2d at 567 (citing Bear U.S.A., 71 F.Supp.2d at 249) (internal quotation marks omitted). Defendant cannot and does not claim lack of notice of the Order to which it consented. Defendant did not seek modification from the Court and failed to meet informally modified deadlines to comply. Finally, as established above, Defendant did not make a good faith effort to comply by

16

continuing to use the Haru name in advertisements, on the phone, and by failing to dissolve Haru Hana Sushi Incorporated. In addition, the parties stipulated in their Settlement Agreement that the prevailing party in an action to enforce would be entitled to fees and costs. See Moerira Decl. ¶ 4, Ex. A ¶ 14.

## VI.   Conclusion

Based on the conclusions set forth above, Plaintiff's motion for a finding of contempt is granted, and Defendant is ordered to pay an amount of $50,000 plus pre- and post-judgment interest to compensate Plaintiff for its breach of the Consent Judgment. Plaintiff is also entitled to reasonable costs and fees associated with enforcement of the Consent Judgment. Precise amounts shall be determined by application.

It is so ordered.

New York, NY
March 15, 2016

ROBERT W. SWEET
U.S.D.J.